UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

JOSEPH T. PONDOLFINO, JR.,

        Plaintiff,

  -against-                        3:10-CV-00749 (LEK/RFT)

NEW YORK STATE AND LOCAL
RETIREMENT SYSTEM; THOMAS
P. DINAPOLI, Comptroller of the
State of New York; KEVIN F. MURRAY,
Deputy Comptroller of the State of New York,

        Defendants.

## MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

Presently before the Court is Plaintiff's motion for a preliminary injunction ("PI") and temporary restraining order (Dkt. No. 5), and Defendants' cross-motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) (Dkt. No. 6). Plaintiff, formerly an attorney for New York State public school districts and municipal employers, has named in his action the New York State and Local Employees' Retirement System, Thomas D. Dinapoli,Comptroller of the State of New York and Kevin F. Murray, Deputy Comptroller of the State of New York. <u>Id.</u> at 1. The sole claim at issue, brought under § 1983, alleges that Defendants deprived Plaintiff of his Fourteenth Amendment right to due process of law, which, absent injunction relief, will cause him irreparable harm.

**II. BACKGROUND**

Beginning in July 1989, Plaintiff was appointed and paid an annual salary to act as school attorney by the Oneonta School Board on the behalf of the Oneonta City School District (OCSD). Compl. at 3. The District provided Plaintiff the opportunity to enroll in the New York State Employees' Retirement System ("ERS" or "System"). Id. at 3. Thereafter, Plaintiff worked for the OCSD as a School Attorney through and including the 2003 school year. In 2003, Plaintiff entered retirement and began to draw benefits from ERS in an annual amount of approximately $168.58 per month. Id.

In December 2009, the ERS sent a letter informing Plaintiff of a proposed determination that Plaintiff was an independent contractor, rather than an employee of OCDS, and therefore his enrollment in the ERS was invalid, and Plaintiff was ineligible for a retirement benefit. Compl., Ex. L. This letter states that it reflects only a "proposed determination," and adds that Plaintiff had an opportunity to provide "documentation or information that support a finding that you were an employee." Id. Plaintiff replied to the December 2009 letter from the ERS by sending the ERS three letters, dated December 21, 2009, December 22, 2009, and January 15, 2010. Compl., Ex. M.

The ERS sent a letter to Plaintiff dated March 17, 2010, which stated that the ERS had determined that Plaintiff was an independent contractor for OCSD, and not an employee of the OCSD, and therefore Plaintiff was "receiving pension benefits to which you [the plaintiff] are not entitled." Compl., Ex. N. The letter also stated that the recovery amount that should be returned to ERS was $5,949.22. Id.

The March letter stated that "[t]he above constitutes the Agency's determination in this matter. § 74 of the Retirement and Social Security Law provides you or your counsel may serve a

2

written demand for a hearing and redetermination of this determination." Id. Furthermore, the letter explains that if a written demand was served on the ERS, "we will schedule and hold an administrative hearing before rendering a final determination," and that [n]o action will be taken to remove reported salary and credited service and suspend your benefit until either (1) the expiration of the time to request a hearing, or (2) a final determination has been rendered following a hearing, or (3) you advise in writing that you do not intend to contest this determination." Id. The letter explains that, if a hearing is requested, Plaintiff will bear the burden of proof that he does qualify as an employee. Id. The parties stipulated that the RSSL § 74(d) hearing on this matter would be postponed following the Motion for a temporary restraining order. Dkt. No. 11.

Plaintiff's suit arises from administrative actions taken by Defendants to determine the eligibility of Plaintiff for membership in ERS; these actions culminated when ERS summarily terminated Plaintiff's membership in August 2008. Id. No pre-deprivation hearing was held in relation to this determination. Id. Subsequently, Plaintiff's status as a member and pension beneficiary in the ERS was reinstated in a letter dated September 10, 2009. This action followed a decision in Supreme Court, Albany County declaring the procedure used by the ERS in summarily stripping individuals of their retirement benefits violative of the Fourteenth Amendment of the United States Constitution. D'Agostino v. DiNapoli, 24 Misc.3d 1090 (Sup. Ct. Albany Co. 2009).

Plaintiff alleges that "[t]he Defendants are acting to deprive Plaintiff of pension benefits earned from his employment as school attorney for the Oneonta City School District ("OCSD"), Oneonta, New York, by retroactive application of new regulations and policies impairing his contractual right, without providing pre-deprivation due process, an opportunity for meaningful post-deprivation due process, and by delaying the administrative action sought to be taken against

3

the Plaintiff for such a period of time as to constitute a violation of his due process rights." Compl. at 1. As stated above, the New York Supreme Court found that Defendants' suspension of the retirement benefits of Albert D'Agostino, a similarly situated person, prior to a hearing and failure to provide adequate notice of the basis for that suspension, violated the constitutional guarantee of procedural due process. Plaintiff alleges in his lawsuit that he has suffered, *inter alia*, irreparable harm as a result of the Defendant's due process and contract clause violations. On this basis, Plaintiff seeks declaratory relief and an injunction preventing the "Defendants from continuing to act to abridge the Plaintiff's constitutionally protected property rights," as well as costs and disbursements, such as attorneys' fees and expenses. Compl. at 19. Plaintiff does not seek damages. Defendants moved the Court to dismiss or stay Plaintiff's action on July 26, 2010, arguing in the main that his claims are unripe, his claims are precluded under the doctrines of res judicata and collateral estoppel, and that his claims are without merit. See generally, Response (Dkt. No. 16).

**II. DISCUSSION**

    **1. Ripeness**

The primary basis on which Defendants move for dismissal is their contention that Plaintiff's § 1983 claim lacks the requisite ripeness of maturity of facts for judicial resolution at this time. Defendants' argument rests on the doctrine of prudential ripeness. Response at 13. That is, while Plaintiff's claim satisfies the requirement of a "concrete dispute affecting cognizable current concerns of the parties sufficient to satisfy standing and constitutional ripeness," Ehrenfeld v. Mahfouz, 489 F.3d 542, 546 (2d. Cir. 2007), the Court is urged to dismiss or stay Plaintiff's action

because its present adjucation would, nevertheless, be premature.[1] "Prudential ripeness is, then, a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary . . ." Simmonds v. INS, 326 F.3d 351, 357 (2d Cir 2003). Both constitutional and prudential ripeness are addressed to this concern of maturity but are not coextensive. Instead, constitutional ripeness "has as its source the Case or Controversy Clause of Article III of the Constitution, and hence goes, in a fundamental way, to the existence of jurisdiction." In contrast, prudential ripeness "is a more flexible doctrine of judicial prudence, and constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it." Id. A court may evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration," Abbott Labs. v. Gardner, 387 U.S. 136, overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977) in deciding whether, in prudential ripeness grounds, a "case will be *better* decided later and that the parties will not have constitutional rights undermined by the delay." Simmonds, 326 F.3d at 357 (emphasis in original).

A court's consideration of this manner of ripeness is governed by a two-step inquiry. See N.Y. Civil Liberties Union v. Grandeau, 528 F.3d 122, 131 (2d Cir. 2008). First, there is a fitness analysis to determine "whether the issues sought to be adjudicated are contingent on future events or

---

[1]Defendants' Motion also raises the question of whether Plaintiff has actually suffered a compensable injury under § 1983 beyond the initial due process violation and its proximate consequences. Defendant argues that only after a final determination is rendered by the Retirement System can the Court determine whether the Plaintiff suffered any legally cognizable injury. However, "absolute certainty of injury is not required for a case to be constitutionally ripe." Simmonds v. INS, 326 F.3d 351, 358 (2d Cir. 2003). The elements of a live case are present, and, if the deprivation of benefits was indeed unjustified, Plaintiff's injuries would be redressed by the relief requested. See Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59, 81 (1978).

may never occur." Simmonds, 326 F.3d at 259 (quotations and citation omitted). The second inquiry concerns the possible hardship to the parties resulting from withholding judicial resolution, and thus requires a court to consider "whether the challenged action creates a direct and immediate dilemma for the parties . . ." beyond the "mere possibility of future injury without the prospect of causing "present detriment." Id. at 360 (quotation and citation omitted).

Defendants argue that essential facts are undeveloped at this stage in the process "because (1) Plaintiff's receipt of retirement benefits is the subject of an ongoing review being conducted by the Retirement System, (2) Plaintiff has yet to participate in a hearing pursuant to RSSL § 74(d), (3) the Retirement System has yet to issue a final determination, (4) Plaintiff continues to receive retirement benefits, and (5) Plaintiff will continue to receive retirement benefits at least until he exhausts his administrative remedies." Response at 13. Defendants argue that the Plaintiff's § 1983 claims are not fit for review because the Plaintiff "continues to receive retirement benefits and has not yet suffered any legally cognizable injury." Id. at 17. Additionally, Defendants argue that the plaintiff will suffer no hardship because the "Plaintiff may raise his constitutional claims in such a state court proceeding" after an administrative hearing has taken place.

Plaintiff seeks declaratory and injunctive relief, arguing that the Plaintiff is being "forced into the untenable position of being at risk of losing a significant property right and being forced to reimburse amounts of money to the ERS without having been afforded any meaningful opportunity to be heard prior to the 'agency determination' having been made by the ERS, by being force to opt into an unconstitutional hearing process requiring him to present his evidence first and requiring the Plaintiff to bear the burden of proof as to why the actions of the agency should not be taken, by the use and application of new regulations and policies which change the conditions that were in place

6

at the time the OCSD determined Plaintiff was an employee, and the significant delay in addressing Plaintiff's entitlement to his retirement benefit after previously determining his right to such benefit." Compl. at 16. Plaintiff argues that "the unreasonable delay of nearly twenty (20) years in reviewing his status in the ERS, has resulted in substantial prejudice to Mr. Pondolfino and severely hampered his ability to challenge the Defendants' actions in any hearing conducted." Mem. in Supp. Pl.'s Mot. for a PR and TRO (Dkt. No. 5) at 6-7.

The Court begins by noting that the facts alleged and relief requested by Plaintiff are, in all relevant ways, indistinguishable from those found in D'Agostino v. DiNapoli, No. 1:09-CV-1347, 2010 WL 3463312 (N.D.N.Y., July 20, 2010). In that action, the Court found the Plaintiff's claims unripe. Id. Cognizant of the similarities between that action and the instant one, and subjecting Plaintiff's complain to the requisite inquiry, the Court finds the same result should obtain here. Upon application of the two-step inquiry, the Court finds that Plaintiff's claim involves issues which render it unfit for judicial resolution at this time; and the Court finds that delaying adjudication will not impose a cognizable hardship upon Plaintiff. Accordingly, for reasons of prudential ripeness, the Court will dismiss the Plaintiffs' claims pending a final administrative determination of Plaintiff's ERS status and, potentially, state judicial proceedings, as will be detailed below.

Plaintiff seeks to "bypass the administrative process and review procedures," including the RSSL § 74(d) hearing and subsequent state court review pursuant to CPLR Article 78, which "would create a serious risk that difficult and important constitutional issues would be decided without an adequate factual context or before it was clear that they even need to be decided." Blocksom & Co. v. Marshall, 582, F.2d 1122, 1124 (7th Cir. 1978). At this time Plaintiff only challenges a preliminary, non-final determination by the Retirement System, Plaintiff continues to

receive his pension benefits, and he has not exhausted the administrative or judicial remedies the State of New York affords him.

As the Second Circuit explained in Coffran v. Bd. of Tr., 46 F.3d 3, 4 (2d Cir. 1994), "Where the challenged procedures have not been applied to the claimant, or where, after their application, the agency has not rendered a final determination adverse to the claimant, the Article III requirements [of actual or threatened injury] have not been met." As the Retirement System has not rendered a "final determination" and the plaintiff continues to receive his retirement benefits and has not yet suffered an actual or threatened injury, the Plaintiff's claims are not yet fit for judicial decision.

Nor will the plaintiff suffer hardship if the Court declines to entertain this action based on ripeness. As the Defendants note, "a RSSL § 74(d) hearing only recently has been requested by Plaintiff," and any final administrative determination "will be subject to state court review pursuant to CPLR Article 78," at which time Plaintiff may raise his constitutional claims. Plaintiff argues that because he would bear the burden of prroof and not be afforded any discovery at the RSSL § 74(d) hearing, this procedure would violate his due process, and therefore impose an undue hardship upon him. Compl. at 15-16. However, as the Second Circuit held in Munafo v. Metropolitan Transp. Authority, 285 F.3d 201, 213, "if the state affords a remedy for alleged violations of due process, the plaintiff may not complain about the sufficiency of a due process remedy by singling out one stage in the administrative proceedings and ignoring the rest of the array of procedures available to him." Plaintiff cannot establish he will suffer hardship by "singling out" the RSSL § 74(d) hearing and ignoring subsequent state proceedings that will be open to him.

Additionally, because the record before the Court lacks essential facts, it is unlikely that

8

Plaintiff's claim could proceed on the available record, which suggests that delay at this stage is inevitable. The mere fact that a plaintiff may assert his claims in the future does not demonstrate that a court's denial of jurisdiction creates hardship to a plaintiff. American Savings Bank FSB v. Ubs Financial Services, 347 F.3d 436, 440 (2d. Cir. 2003). Because the Court finds that no hardship would be imposed and in view of the compelling reasons why Plaintiff's claim is not fit for review at this time, the Court dismisses Plaintiff's claims pending the administration determination after the RSSL § 74(d) hearing and any subsequent state judicial proceedings.

**2. Abstention**

Defendants also assert that the Court should decline to exercise subject matter jurisdiction pursuant to the abstention doctrine set forth in Younger v. Harris, 401 U.S. 37 (1971). Under Younger abstention, federal courts must generally abstain from exercising jurisdiction over constitutional claims being adjudicated in state proceedings. The Supreme Court originally applied this doctrine to criminal proceedings pending in state courts, but it now pertains equally to cases involving state administrative proceedings. See, e.g., Middlesex County Ethics Comm v. Garden State Bar Ass'n, 457 U.S. 423 (1982); Diamond "D" Construction Corp. v. McGowan, et al., 282 F.3d 191, 198 (2d Cir. 2001). The doctrine was developed in the interest of comity and the protection of "Our Federalism," and it recognizes that "ordinarily a state proceeding provides an adequate forum for the vindication of federal constitutional rights." Cullen v. Fliegner, 18 F.3d 96, 103 (2d Cir. 1994).

Younger abstention applies when (1) a state proceeding is ongoing that is judicial in nature, which (2) implicates an important state interest, and (3) the state proceeding provides the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims. Diamond

"D", 282 F.3d at 198.  The requirement that a state proceeding be "ongoing" relates to the time when the federal action is initiated.  Hansel v. Town Court for Town of Springfield, NY, 56 F.3d 391, 393 (2d Cir. 1995) (citing Dubinka v. Judges of Superior Court of the State of California for the County of Los Angeles, 23 F.3d 218, 223 (9th Cir. 1994)); see also Blackwelder v. Safnauer, 689 F. Supp. 106, 117 (N.D.N.Y. 1988).

Plaintiff argues that the administrative actions of the Comptroller's Office in reviewing whether the Plaintiff and other individuals are eligible to be members of the Retirement System is not "judicial in nature" because it merely involves correcting an administrative error. Surreply at 2-3.  The Court finds, however, that the actions taken by the Defendants involve adjudicatory proceedings that are indeed "judicial in nature."

The RSSL § 74(d) hearing in particular involves adjudicatory characteristics that make it fundamentally judicial in nature. This hearing explicitly aims "to limit the issues to be determined by the Hearing Officer and to provide the applicant an opportunity to present his or her case." 2 N.Y.C.R.R. Part 317.4.  At this hearing, the Plaintiff is required to "present all witnesses; lay, medical experts, where required, and/or other experts whose testimony will be offered by the applicant in his or his behalf."  Id.  Next, the "Hearing Officer may hear argument and entertain motions for dismissal or for other appropriate relief."  Id.  Finally, at the conclusion of the hearing, the Hearing Officer renders "his determination upon receipt of the transcribed record." Id. According to the March letter received by the Plaintiff, this decision constitutes a "final determination." Compl., Ex. N.

In Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191 (2d Cir. 2002), the Second Circuit held that an administrative process which was, in all relevant ways, indistinguishable from

the administrative process in the present case, constituted an "ongoing state proceeding" for the purposes of Younger abstention. In that case, after the New York Department of Labor ("DOL") had determined based on an investigation that an employer had underpaid wages, the parties were awaiting a DOL administrative hearing. Id. at 12. If the hearing resulted in a determination that was adverse to the plaintiff, this party has the right to challenge the DOL's administrative findings in an Article 78 proceeding in state court, at which time the plaintiff could raise "constitutional challenges to the DOL investigation and administrative proceeding." Id. at 194.

Similarly, in this case, Plaintiff is awaiting an administrative hearing that will adjudicate his claims; and following this hearing, Plaintiff can challenge the administrative determination in an Article 78 proceeding. At this time, Plaintiff may mount constitutional challenges to the Retirement System's administrative process. Therefore, the Court finds that the administrative process at issue in this case is fundamentally "judicial in nature," and constitutes an ongoing state proceeding for the purposes of Younger abstention.

The Court also finds that the ongoing state proceeding "implicates an important state interest." In the Second Circuit, "determining whether the 'important state interest' requirement has been met" requires us to "consider whether the state action concerns the central sovereign functions of state governments such that exercise of the federal judicial power would disregard the comity between the States and the National government." Phillip Morris, Inc. v. Blumenthal, 123 F.3d 103, 106 (2d. Cir. 1997) (quotations and citation omitted). The Court does "not narrowly [look] to the State's interest in the outcome of the particular case, but rather look[s] to the importance of the general proceedings to the State." Id. Finally, "The burden is on the state to establish that an important state interest is implicated." Id.

11

As the Defendants' argue in their Reply Brief, an "important state interest indisputably is implicated by the Retirement System's ongoing review, undertaken to determine whether private practice professionals such as Plaintiff . . . truly served as employees." Reply Memo. at 11-12.  The Comptroller serves "as the administrative head of the Retirement System and the sole trustee of the assets of the Retirement system," and thus has an obligation "pursuant to § 111(b) to correct Retirement System records that erroneously result in any beneficiary receiving more or less than the beneficiary is entitled to receive." Id. at 12.  The state proceedings at issue, when viewed beyond this particular case, implicate the important interest the state has in distributing retirement funds in an accurate and systematic manner.

Finally, after the state has made a determination in the RSSL §74(d) hearing, Plaintiff will have an opportunity to raise constitutional challenges to the administrative process in a CPLR Article 78 proceeding.  Therefore, the Court finds that the Plaintiff will have an "adequate opportunity for judicial review of the federal constitutional claims" in the ongoing state proceeding.  Consequently, the Court holds that it should decline to exercise subject matter jurisdiction pursuant to Younger abstention doctrine.

**IV.  CONCLUSION**

For the foregoing reasons, it is:

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED, without prejudice**, consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:     October 07, 2010
                Albany, New York

*[Signature]*
Lawrence E. Kahn
U.S. District Judge